DOCKETED

IN THE UNITED STATES DISTRICT COURT FOR THE DEC 0 5 2003
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE E. BURKES, JR., ) | 03C 8787 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | JUDGE ZAGEL |
| THE COUNTY OF KANKAKEE, a body ) | District Judge: |
| politic and corporate, CITY OF KANKAKEE, a ) | |
| municipal corporation, KANKAKEE AREA ) | Magistrate MAGISTRATE JUDGE |
| METROPOLITAN ENFORCEMENT GROUP, a ) | GERALDINE SOAT BROWN |
| joint venture of municipalities and bodies politic or ) | |
| an association of such entities, TIMOTHY ) | |
| BUKOWSKI, in his official and personal ) | |
| capacities, MICHAEL KINKADE, in his official ) | |
| and personal capacities, AUSTIN BANK OF ) | |
| CHICAGO, as Trustee U/T/A dated July 20, 1988 ) | **JURY TRIAL DEMANDED** |
| (Tr. No. 6431), CRESTVIEW VILLAGE ) | |
| APARTMENTS, L.P., an Illinois limited ) | |
| partnership, DONALD GREEN, in his official and ) | |
| personal capacities, KENNETH MALLANDINE, ) | |
| in his personal capacity, JACK JOHNSTON, in his ) | |
| personal capacity, CHAD GESSNER, in his ) | |
| personal capacity, PATROLMAN MARTIN, in his ) | |
| personal capacity, LIEUTENANT MARCOTTE, in ) | |
| his personal capacity, PERRY GROUP, LTD., an ) | |
| Illinois limited partnership, TONY PERRY & ) | |
| ASSOCIATES, INC., an Illinois corporation, ) | |
| TONY PERRY, an individual, and OTHER ) | |
| UNKNOWN PERSONS, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF

NOW COME the Plaintiffs, LAWRENCE BURKES, by and through his attorney MARK W.

DANIEL of RATHJE & WOODWARD, and states the following as his Complaint for Damages,

Injunctive and Other Relief ("Complaint") against the Defendants THE COUNTY OF KANKAKEE,



a body politic and corporate, CITY OF KANKAKEE, a municipal corporation, KANKAKEE AREA METROPOLITAN ENFORCEMENT GROUP, a joint venture of municipalities and bodies politic or an association of such entities, TIMOTHY BUKOWSKI, in his official and personal capacities, MICHAEL KINKADE, in his official and personal capacities, AUSTIN BANK OF CHICAGO, as Trustee U/T/A dated July 20, 1988 (Tr. No. 6431), CRESTVIEW VILLAGE APARTMENTS, L.P., an Illinois limited partnership, DONALD GREEN, in his official and personal capacities, KENNETH MALLANDINE, in his personal capacity, JACK JOHNSTON, in his personal capacity, CHAD GESSNER, in his personal capacity, PATROLMAN MARTIN, in his personal capacity, LIEUTENANT MARCOTTE, in his personal capacity, PERRY GROUP, LTD., an Illinois limited partnership, TONY PERRY & ASSOCIATES, INC., an Illinois corporation, TONY PERRY, an individual, and OTHER UNKNOWN PERSONS:

## INTRODUCTION

1.    This lawsuit arises from the intentional, reckless, malicious and negligent conduct of the Defendants to deprive the Plaintiff of his civil rights and rights under the First, Fourth and Fourteenth Amendments of the United States Constitution. Over the past three (3) years, Defendants have engaged in a concerted effort, pattern and practice, under color of law, to deprive invitees of an apartment complex, including Plaintiff, of their civil rights, culminating in an incident occurring on December 4, 2002 in which two KAMEG officers pepper sprayed the Plaintiff and beat him into an unconscious and bloody state, thereby depriving him of his freedom of movement during a false arrest of another and the false arrest and/or use of excessive force against him. Following this incident, Plaintiff was harassed by police on a second occasion during a warrantless search with no probable cause whatsoever on January 1, 2003.

2.    Since no later than January 1, 2002, the following principles were was clearly

2

established:

    (a)    The use of force, including the release of pepper spray to disburse young adults, including Plaintiff, assembled in a group for lawful purposes in a common area on private property, was excessive;

    (b)    The use of force, including the beating of Plaintiff who was the subject of a warrant found only after police attacked Plaintiff, was excessive;

    (c)    The use of force, including the beating of Plaintiff into a state of unconsciousness and causing a head injury after the warrant was disclosed as arising from missing a court date in a non-violent DUI matter, was excessive;

    (d)    The enforcement of trespass and loitering laws to disburse a gathering for purely lawful purposes was prohibited under the United States Constitution and the 1970 Illinois Constitution;

    (e)    The use of pepper spray and violence including beating Plaintiff until he was bleeding and unconscious before throwing him down a stairway then forcibly pushing his head and face into a brick wall while handcuffed, was excessive;

    (f)    The use of force, including the beating and kicking of the Plaintiff while he was in handcuffs in a public location was excessive;

    (g)    The use of compelled random searches of minority individuals under threat of violent and physical reprisals such as the use of pepper spray, the use of hand violence to the point of unconsciousness and beating arrested persons in handcuffs violates the rights of Plaintiff and others to be free of unlawful searches and seizures;

    (h)    The use of a purported third party agreement such as the Agency Agreement attached as Exhibit "A" to allegedly expand the search and seizure authority of police to stop

3

all persons, including Plaintiff, without warrant or probable cause was unconstitutional;

(i)     The assumption by police of the owner's right, power and authority to bar persons from private property and then use such a bar as a basis from an arrest and subsequent search upon a criminal trespass charge was unconstitutional;

(j)     The conspiracy of the police to accomplish the activities noted in subparagraph (a) through subparagraph (i) is unconstitutional; and

(k)     The use of overbearing, unlawful, violent and unconstitutional activities of the police noted in subparagraph (a) through subparagraph (j) in order to force the eviction of broad classes of people living in public housing complexes by harassing their invitees and intimidating them from visiting the Complex at issue by simple reason of their association with minorities and lower income residents of the City and, simultaneously, to further a private developer's interest in redeveloping surrounding commercial and industrial real estate was unconstitutional.

3.      On December 4, 2002, Plaintiff suffered severe physical, physiological and psychological injury as a result of the Defendants' use of excessive force in arresting Plaintiff and another individual outside of the apartment where Plaintiff was an invitee.

4.      During the December 4, 2002 arrest, the involved officers sprayed Plaintiff with pepper spray, deprived him of his freedom of movement and forced him to remain in harm's way and to suffer a terrible beating rendering him permanently scarred, caused damage to his nervous and muscular-skeletal systems and leaving him unconscious and with a head injury.

5.      During a January 1, 2003 arrest, Plaintiff was the victim of an unconstitutional stop for loitering, released, then arrested for criminal trespass based upon the unconstitutional actions of the

4

police in violation of Plaintiff's rights under the Civil Rights Act and Plaintiff's rights under the Fair

Housing Act as a frequent guest of many tenants in the Complex at issue.

6. The January 1, 2003 arrest arose from false telephonic communications from one of the

officers that severely beat Plaintiff on December 4, 2002.

### PARTIES

7. Plaintiff was frequently an invited guest of friends and family members at the Complex

and of no fewer than three of more than 100 families living in a collection of multiple-family

apartment buildings known as Crestlane Apartment which are located on North Crestlane Drive in

Kankakee, Illinois (the "Complex").

8. Plaintiff is a resident of Hopkins Park, Kankakee County, Illinois.

9. The Defendant KANKAKEE AREA METROPOLITAN ENFORCEMENT GROUP

("KAMEG"), is a joint venture of municipalities and bodies politic or an association of

municipalities and bodies politic. The members of KAMEG include the County and the City.

10. The Defendant COUNTY OF KANKAKEE ("COUNTY") is a body politic and

corporate in the State of Illinois, organized under the Illinois Counties Code and existing in

Kankakee County, Illinois.

11. The County has one TIMOTHY BUKOWSKI ("SHERIFF") as its Sheriff and the

Sheriff is named in this suit personally and in his individual capacity for his conduct in determining

law enforcement policy for the County and those subject to law enforcement within the corporate

limits of the County. Through the SHERIFF, the County, on information and belief, has assigned

one or more officers to directly serve as points of communication and authority within the

governmental venture or association known as KAMEG and it funds KAMEG through direct

contributions of money, infrastructure and employee time and indirectly through authorizations of

5

budgets or other financial documents that include grants from other government entities at the federal and state level that support KAMEG. SHERIFF is an individual sworn to those duties and responsibilities attendant to a sheriff and county law enforcement officer within the COUNTY's sheriff's department and he serves as one law enforcement officer in KAMEG.

12. The Defendant CITY OF KANKAKEE ("CITY") is an Illinois municipal corporation organized under the Illinois Municipal Code and existing in Kankakee County, Illinois. The City, pursuant to ordinance, has authorized an appointed individual to act as chief and several others who act in other capacities, to determine law enforcement policy for the City and those subject to law enforcement within the corporate limits of the City. The City, on information and belief, has assigned one or more officers to directly serve as points of communication and authority within the inter-municipality organization known as KAMEG and its funds KAMEG through direct contributions of money, infrastructure and employee time and indirectly through authorizations of budgets or other financial documents that include grants from other government entities at the federal and state level that support KAMEG.

13. The City has one MICHAEL KINKADE ("CHIEF") as its Chief of Police and Plaintiffs name the chief in his official and personal capacities.

14. AUSTIN BANK OF CHICAGO, as Trustee U/T/A dated July 20, 1988 (Tr. No. 6431)("TRUST"), is the legal owner of the Complex.

15. Defendant CRESTVIEW VILLAGE APARTMENTS, L.P. ("MANAGER"), is an Illinois limited partnership with operations in Inverness, Cook County, Illinois and, on information and belief, remains the management/operations firm for the Complex at issue in this Complaint.

16. MANAGER, directly or through agents, managed the apartment complex before December 4, 2002, on December 4, 2002 and after December 4, 2002.

6

17.    Defendant, DONALD GREEN ("MAYOR"), is the Mayor of the City and he is named in his official and personal capacities.

18.    Defendants KENNETH MALLANDINE, ZACHARY JOHNSTON, CHAD GESSNER, PATROLMAN MARTIN, LIEUTENANT MARCOTTE, PATROLMAN PASEL are all individuals who were on duty on either December 4, 2002 or January 1, 2003 when two of the incidents giving rise to the Plaintiffs assertions in the case occurred.    All of them are named in their individual capacities, with only those officers not present on December 4, 2002 being excepted from the damages claim because they were not present at the time of Plaintiffs' injuries on December 4, 2002.

19.    Each defendant noted in Paragraphs 13 and 18 is an individual sworn to those duties and responsibilities attendant to a police officer within the CITY's police department and who also serves as one of the officers in KAMEG.

20.    On information and belief, Defendant PERRY GROUP, LTD. ("PERRY GROUP") is an Illinois limited partnership with offices bearing a street address for its operations in Chicago, Cook County, Illinois and with a post office box in Kankakee, Kankakee County, Illinois.

21.    On information and belief, Defendant TONY PERRY & ASSOCIATES, INC. ("PERRY ASSOCIATES") is an Illinois corporation with its principal place of business in Kankakee County, Illinois.    The principal owner of PERRY ASSOCIATES is TONY PERRY and PERRY ASSOCIATES, on information and belief, is a partner in the PERRY GROUP.

22.    Defendant TONY PERRY ("PERRY") is an individual who resides in Bourbannais, Kankakee County, Illinois.

23.    Remaining potential Defendants have not been identified by and are not known to Plaintiffs after attempting to complete a due investigation that included (a) several interviews, (b)

7

requests under the Illinois Freedom of Information Act to which the CITY did not fully respond and (c) efforts of their counsel to obtain full *Schmidt* discovery in two criminal misdemeanor cases to identify police witnesses to events on December 4, 2002 and January 1, 2003. Plaintiffs anticipate personally naming as defendants in counts seeking damages those persons who were present at Crestlane Apartments and either contributed to or wilfully permitted the injuries to Plaintiffs on December 4, 2002. At present, Plaintiffs designate these persons as UNKNOWN DEFENDANTS.

## JURISDICTIONAL BASIS

24.     This case arises under 42 U.S.C. §§1983, 1985 and 1986 and jurisdiction lies in this Court under 28 U.S.C. §1331 and 28 U.S.C. § 1343(3).

25.     This case arises under 42 U.S.C. §§3604 and 3613 and jurisdiction lies in this Court under 28 U.S.C. §1331 and 28 U.S.C. § 1343(3).

26.     In light of the claims for which there is original federal jurisdiction as noted in Paragraphs 24-25, this Court has supplemental jurisdiction over all remaining claims in this Complaint in that they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

27.     This Court also has jurisdiction over the state law claims according to United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130 (1966).

## VENUE

28.     PERRY GROUP, TRUST and MANAGER are all operating entities in Cook County, Illinois and, as a result, they are deemed to reside within this district under 28 U.S.C. §1391(c).

29.     On information and belief, the real estate development business of PERRY GROUP as well as the ownership and operations conduct of TRUST and MANAGER occurred in either Chicago or Inverness in Cook County, Illinois despite the location of the Complex in Kankakee.

8

30.     On information and belief, the CITY, acting through its CHIEF, and the COUNTY, acting through its SHERIFF, planned and reorganized KAMEG when the CHIEF and SHERIFF met for such purpose in Chicago, Cook County, Illinois.

31.     Venue in this Court is appropriate 28 U.S.C. §1391(b).

## FACTS APPLICABLE TO ALL COUNTS

## THE CRESTLANE APARTMENT COMPLEX

32.     Plaintiff was the frequent guest of tenants who rent or then rented units at the Complex.

33.     The Complex is a multiple family development with numerous attached units in each of its several buildings.

34.     The Complex has at least three open space areas that are landscaped, a playground, parking areas, and common stairwell, meeting, laundry and hallway areas.

35.     The Complex is the host of several renters or tenants, including Plaintiff's friends and family who invited him to the Complex.

36.     The renters regularly invite friends and family to the Complex, including Plaintiff.

37.     The numerous renters and tenants also congregate, together and with friends and family, in the common areas noted in Paragraph 34 for lawful purposes of association.

38.     On information and belief, the vast majority Complex's several renters and tenants are program beneficiaries that receive support from the United States Department of Housing and Urban Development.

39.     The majority of renters and tenants, as well as their families and guests, are African-Americans by appearance and by blood.

40.     Plaintiff and the persons he was with on December 4, 2002 and January 1, 2003 are African-American by blood and appearance as well.

9

41. On information and belief, the TRUST, through its and MANAGER, duly executed the Kankakee City Police Department Agency Agreement which is attached hereto as Exhibit "A".

## FACTS APPLICABLE TO KAMEG AND ITS POLICIES AND PRACTICES

42. On information and belief, KAMEG has the eradication of the drug trade and inter-jurisdictional crime as its primary governmental purpose.

43. On information and belief, KAMEG has adopted other purposes reflected through official policies and procedures which include:

a. the unlawful application of loitering and criminal trespass laws to the residents and guests of residents of low-income housing complexes, affordable housing units and rental units, including the Complex;

b. the unlawful prohibition of loitering for lawful purposes solely in relation to the residents and guests of residents of low-income housing complexes, affordable housing units and rental units, including the Complex;

c. the unlawful effectuation of several open and public arrests and detentions without probable cause or warrant in relation to the residents and guests of residents of low-income housing complexes, affordable housing units and rental units, including the Complex;

d. the unlawful use of excessive force in making arrests of residents and invitees of residents and guests of residents of low-income housing complexes, affordable housing units and rental units, including the Complex;

e. the use of surveillance and other policing tactics that serve to deprive and that have deprived Plaintiff of the benefits of his family relationships and his friendships as well as his freedom of association and movement and his right

10

to avoid unlawful searches; and

    f.    continuation of the purposes and polices in "d" and "e" in an effort to intimidate witnesses to the daily occurrences involving KAMEG, COUNTY and CITY operations in the Complex from exercising their rights to associate, communicate and petition the courts or their elected officials for redress of grievances.

44.    The purposes, policies and practices noted in Paragraph 43 are uniform and of a longstanding practice.

45.    In part, these policies and practices also arise from or have found their place in the Agency Agreement between TRUST or MANAGER and the CITY (and, indirectly KAMEG).

46.    These policies and practices have also evolved from the force so excessive as the use of firearms by police while in common grassy areas where Plaintiff has congregated previously, the beating Plaintiff while in handcuffs, and the false arrest of Plaintiff, among other things.

47.    These policies and practices have also included the intent to display excessive force in order to apply pressure to individuals who are residents and guests of residents into consenting to unannounced police searches of their persons and their residences without warrant or lawful probable cause to do so.

48.    These policies and practices have led to numerous searches and attempted searches of units in a random fashion in an effort to intimidate and coerce residents of the Complex in which Plaintiff resides into submitting to the desires of police in their operations at the Complex.

49.    Despite opposition expressed by an employee of an agent for MANAGER, the CITY and KAMEG continued these policies and practices.

50.    Despite their knowledge of the problems encountered by and the objections expressed

11

by an employee of an agent for MANAGER, TRUST and MANAGER did nothing to curb the actions of the CITY and KAMEG and TRUST and MANAGER permitted the Agency Agreement to remain in effect with no interruption or termination.

51.    These policies and practices mentioned in Paragraphs 43-48, on information and belief, are also the policies of the CITY, MAYOR, CHIEF, COUNTY, SHERIFF and officers on duty and acting at the Complex in behalf of KAMEG.

52.    CITY and COUNTY wish not to permit housing for tenants subsidized by the United States Department of Housing and Urban Development at the northeast quadrant of the intersection of Interstate 57 and Court Street (Illinois Route 17) where the Complex is located adjacent and proximate to in excess of 100 acres of prime land owned by PERRY GROUP targeted for redevelopment by PERRY GROUP, PERRY ASSOCIATES, PERRY, the CITY and the MAYOR.

53.    On information and belief, the policies and practices of the Defendants have resulted from their expressed support of a real estate redevelopment project on land owned, operated or under contract to an entity controlled by PERRY, PERRY ASSOCIATES and PERRY GROUP.

**THE KANKAKEE CITY POLICE DEPARTMENT AGENCY AGREEMENT**

54.    The CITY has adopted the policies and practices of KAMEG though the following actions:

   a.    on information and belief, the CITY authorized its police chief to execute the Agency Agreement with the TRUST and MANAGER, as well as the owners or operators of more than 1,000 other rental addresses in the CITY, and the police chief has executed such agreement;

   b.    on information and belief, the CITY has directed it police chief to closely supervise and reward officers on its police force who have responsibility for

12

police activities in the Complex for the number of their arrests made in the Complex;

c.    on information and belief, the CITY and CHIEF have assigned specific duties to officers who participate in KAMEG which has, as one of its purposes, the conduct of unlawful searches and seizures, false arrests and arrests with excessive force;

d.    on information and belief, the CITY and CHIEF have hired and promoted to management within the CITY police force's ranks individual police officers who have a history involving the use of excessive force and done so despite the CITY's and CHIEF's knowledge of such history;

e.    on information and belief, the CITY has hired and promoted an individual who has, as part of his official duties, created a system of reporting law enforcement incidents but continued to permit individual officers involved in arrests at the complex to file late, untimely and false reports;

f.    on information and belief, the CITY has hired and promoted an individual who has, as part of his official duties, supervised the cleansing of police reports in violation of the rights of criminal defendants, including the individual in the altercation which is the subject of Count One and Count Two;

g.    on information and belief, the CITY determined not to attempt sufficient training of its officers in the areas of race relations, relations to residents of federally-subsidized housing, loitering laws, trespassing laws and the effectuation of lawful arrests without the unlawful excessive use of force; and

h.      on information and belief, the CITY's corporate authorities voted to censure or attempted to censure an alderman in the CITY for his actions to confirm reports of excessive force, unlawful stops and searches and brutality by CITY police and officers within KAMEG.

55.     The acts and decisions of the CITY's corporate authorities, the CHIEF, the management employees of the CITY police department and CITY police officers serving as the point of communication for KAMEG represent the municipal policy of the CITY.

56.     The pattern of excessive force in the Complex and elsewhere in Kankakee was known within and without the CITY and the COUNTY.

14

### COUNT ONE–42 U.S.C. §1983 EXCESSIVE FORCE

(Plaintiff vs. KAMEG, City, County, Chief, Officers Present on December 4, 2002)

1-56.    Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 56 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 1 through Paragraph 56 of this Count One.

57.    On December 4, 2002, CITY police officers performing services within KAMEG were conducting surveillance and enforcement efforts in order to enforce an unwritten loitering law and an unwritten trespassing law that the City and KAMEG continually enforced prior to December 4, 2002 and that the City and KAMEG continue to enforce today.

58.    Specifically, the City and KAMEG, without legislative or constitutional authority at the federal or state level, have determined that the collection of more than one person for any purpose, including lawful purposes protected by the United State Constitution and the 1970 Illinois Constitution, is illegal if it occurs in any non-private area of the Complex.

59.    The City and KAMEG, without legislative or constitutional authority at the federal or state level, have determined that its officers, including the defendant officers, will assert probable cause to conduct searches and interrogations of individuals without providing them an explanation of their rights under <u>Miranda</u> and they have continually conducted random frisks on individuals through this process.

60.    On December 4, 2002, the first person arrested was Plaintiff, an individual who at the time of the arrest was merely being questioned about his presence in a hallway of the Complex, but who was later found to be the subject of a bench warrant after a sentencing by agreement and in *absentia* on a DUI charge handled by a Kankakee County Public Defender.

61.    On December 4, 2002, Burkes and a second person were subject to inquiry by officers

15

as they found them engaged in the nonviolent and lawful activity of gathering in the hallway of the Complex.

62.    Burkes and the second person were never suspected of participating in any crime other than "loitering" as reported by the police report.

63.    Burkes and the second person were not the subjects of a warrant for any circumstance related to the commission of a violent crime.

64.    No harm was likely to result in the event either Burkes or the Second Person avoided apprehension for gathering in the hallway of the Complex.

65.    Officers used deadly force in dealing with Burkes and rendered Burkes unable to see, beating him until he was unconscious with a head injury, permanently scarred and bloody during their attempt to arrest Burkes for loitering.

66.    Officers used excessive force in dealing with the second person in rendering the second person unable to see or breath for a period of time after the use of pepper spray.

67.    On January 1, 2003, one of the officers who was present on December 4, 2002 planted false information regarding a bar from the Complex that purportedly applied to Plaintiff and caused his arrest for criminal trespass as attacked under Count Two.

68.    On December 4, 2002, officers stopped the Burkes and accused him of loitering as he was walking in a limited common area in the Complex with a resident of the Complex and as an invitee of this resident and other residents in the Complex.

69.    The officer then conducted two warrantless searches with no probable cause for either search.

70.    On December 4, 2002, Plaintiff was situated on the landing located between two midfloor units in a building located in the complex when two officers approached him and a friend

from the rear stairway of the building and inquired about their presence in the hallway.

71.    The two officers expressed their concern that Plaintiff was loitering and in violation of the law of the State of Illinois and the City of Kankakee.

72.    At the time when Plaintiff was located in the hallway, he was an invitee of one or more of the residents of the Complex and he could not have been loitering or trespassing as a matter of law.

73.    On December 4, 2002, and at approximately 8:00 p.m., Plaintiff and the others located in the hallway were engaged in lawful conduct among close friends and family after sharing a social engagement in a unit of the building, playing video games and talking.

74.    On December 4, 2002, the two officers entered the building where Plaintiff was located via the back stairway.

75.    Upon seeing the officers, Plaintiff took one step away from the point where he stood and attempted to leave the building, an officer called for Plaintiff and Plaintiff stopped.

76.    One officer asked Plaintiff for identification in the same fashion customarily pursued by CITY police and KAMEG officers during their several warrantless and humiliating stops and searches without any probable cause.

77.    Plaintiff turned away and asked why they stopped him.

78.    The officer grabbed Plaintiff by the back of his neck and threw him against the hallway wall, face first, before beginning a beating by pepper spray, hands, fists, knees and foot that left Burkes unconscious and with a head injury.

79.    A second and third officer participated in this beating and were co-actors or joint actors with the first officer.

80.    When the someone yelled to the officers to relieve Plaintiff of the beating they were

17

inflicting on him, an officer attacked the friend through the use of pepper spray and bodily force that resulted in the officer throwing and pushing the friend into an apartment.

81.    With no physical assault or battery or resistence by Plaintiff or the friend, an officer released a stream of pepper spray into the entire hallway, beginning from a close range of inches from the faces of the friend and Plaintiff.

82.    Defendants, without cause or reason, sprayed pepper spray at Plaintiff.

83.    Plaintiff suffered burning in his eyes and nose, pain and suffering and loss of clear and unaffected vision for a period of time.

84.    The officers also kneeled on Plaintiffs back and hit and kicked him repeatedly in the head, neck, shoulders, stomach, groin and legs.

85.    The officers then picked the Plaintiff up with his head drooping and with Plaintiff visibly unconscious and threw Plaintiff down a flight of stairs.

86.    Plaintiff landed on his head and neck only to have another defendant officer pick him up and push his head into a brick wall.

87.    The officers removed Plaintiff from the entry hallway of the building and, while Plaintiff was handcuffed and in fully public view, hit the Plaintiff.

88.    Officers then violently threw the Plaintiff into the front seat of a squad car, causing Plaintiff to further hurt himself as he hit police equipment and hard interior portions of the vehicle.

89.    As a result of the spraying of pepper spray and the beating inflicted by the officer defendants present on December 4, 2002, Plaintiff suffered severe emotional distress at the time of the incident on December 4, 2002 and he continues to suffer this emotional distress which includes increased shyness, enhanced timidity and flashbacks. Plaintiff also suffered a loss of hair, permanent scarring and a loss of sensation in his wrist, hand and arms leading to a partial disability of his hand

18

for a period of time.

90.  Officers then took Plaintiff to a medical center where the harassed and taunted Plaintiff following the time when he regained consciousness.

91.  Doctors tendered Plaintiff to the custody of officers after treatment and provided specific instructions for Plaintiff's care, which instructions officers disregarded.

92.  Through this disregard, the officers caused further injury to Plaintiff.

93.  Further, the officers transported Plaintiff from the hospital to the jail in a fashion intended to torment Plaintiff as he was nearly naked in freezing temperatures and bound by handcuffs.

94.  Despite direction from medical professionals, officers locked the Plaintiff in a solitary room, with the handcuffs binding Plaintiff to a chair as he sat partially clothed for an extended and unreasonable period of time.

95.  Officers did not permit Plaintiff to communicate with anyone from his arrival at the jail and they did not provide Plaintiff any care or any water until the following morning despite Plaintiffs' head and other injuries.

96.  One of the officers from December 4, 2002 continued to harass and humiliate Plaintiff by providing false information and eluding the true provisions of Illinois law governing trespass when he informed a fellow officer to arrest Plaintiff for criminal trespass on January 1, 2003 when Plaintiff returned to the Premises.

97.  The officers' actions arose in substantial part through the training of KAMEG officers and the lack thereof.

98.  The officers' actions were motivated by Plaintiff's race and color.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court enter a judgment

against the CITY, COUNTY, CHIEF, KAMEG and officers MARTIN, MALLANDINE, PASEL and

MARCOTTE as well as the UNKNOWN OFFICERS providing as follows:

A.   Enjoining the CITY, COUNTY, KAMEG as well as their officers from taking or omitting any action in an effort to retaliate against Plaintiff or any other person in their family for filing this suit;

B.   Enjoining the CITY, COUNTY and KAMEG as well as their officers from conducting the ongoing stops and searches (pat-down, interrogations and unit entries) without warrant and without probable cause;

C.   Enjoining the CITY, COUNTY and KAMEG as well as their officers from entering upon common areas other than paved parking surface with their vehicles;

D.   Mandatorily imposing upon the CHIEF, OFFICERS, CITY, COUNTY and KAMEG training, education and other requirements with the goal of enhancing the knowledge of racial matters and relations and betting the skills of officers within CITY and COUNTY law enforcement relating to interracial cooperation;

E.   Compensatory damages, paid to Plaintiff, by the CITY, MAYOR, CHIEF, KAMEG and listed officers in a reasonable amount which the trier of fact deems sufficient to compensate Plaintiff for his injuries;

F.   Punitive damages paid to Plaintiff by the CITY, MAYOR, CHIEF, KAMEG and listed officers in a reasonable amount which the trier of fact deems sufficient to deter future illegal conduct;

G.   Punitive damages paid to Plaintiff by MAYOR, CHIEF and the officers present on December 4, 2002 and January 1, 2003 in their personal capacities in a reasonable amount which the trier of fact deems sufficient to deter the conduct of these

20

individuals; and

H.    Payment by the CITY, MAYOR, KAMEG, CHIEF and listed officers of Plaintiff's attorneys' fees, witness fees and costs of this action, in an amount to be set forth in an affidavit from the attorney(s) for Plaintiff at the conclusion of this matter.

## COUNT TWO–42 U.S.C. §1983 FALSE ARREST

(Plaintiff vs. KAMEG, City, County, Chief, Officers Present on December 4, 2002)

1-98.    Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 98 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 1 through Paragraph 98 of this Count Two.

99.    Since no later than January 1, 2000, the following principles were clearly established:

a.    without warrant or probable cause to do so, police could not restrict the liberties of an individual through arrest; and

b.    Criminal trespass charges require a finding that the owner of the premises barred Plaintiff from the Premises.

100.    Plaintiff was falsely arrested on January 1, 2003 in that CITY and KAMEG officers present stopped Plaintiff merely for loitering then released him.

101.    Following such release, an officer from December 4, 2002 informed one of the officers present on January 1, 2003 that the officer present on December 4, 2002 barred Plaintiff from the Premises.

102.    The officers present on January 1, 2003 arrested Plaintiff for criminal trespass on such word of the officer and disregarded the fact that Plaintiff was arrested while in the presence of a tenant at the Complex as the tenant's invitee and despite the fact that not one barred list from the TRUST or MANAGER has *ever* included Plaintiff.

103.   This stop for "loitering" and the arrest for trespass were false arrests which (a) violated Plaintiff's constitutional rights and (b) abused his civil rights because they occurred as a result of his race and skin color.

104.   Plaintiff suffered great personal humiliation, embarrassment and false imprisonment as well as severe emotional distress upon and after the false arrest.

105.   Plaintiff has also suffered financially in that he has incurred thousands of dollars in expenses defending charges that arose from his illegal and unconstitutional stop, seizure and search.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court enter a judgment against the CITY, COUNTY, CHIEF, KAMEG and officers MARTIN, MALLANDINE, PASEL and MARCOTTE as well as the UNKNOWN OFFICERS providing as follows:

A.     Enjoining the CITY, COUNTY, KAMEG as well as their officers from taking or omitting any action in an effort to retaliate against Plaintiffs or any other person in their family for filing this suit;

B.     Enjoining the CITY, COUNTY and KAMEG as well as their officers from conducting the ongoing stops and searches (pat-down, interrogations and unit entries) without warrant and without probable cause and from enforcing the trespass statute in Illinois on the basis that the police somehow have the authority to make the decision to bar a person from non-publicly owned property;

C.     Mandatorily imposing upon the CHIEF, OFFICER, CITY, COUNTY and KAMEG training, education and other requirements with the goal of enhancing the knowledge of racial matters and relations and betting the skills of officers within CITY and COUNTY law enforcement relating to interracial cooperation;

E.     Compensatory damages, paid to Plaintiff, by the CITY, MAYOR, KAMEG, CHIEF

22

and listed officers in a reasonable amount which the trier of fact deems sufficient to compensate Plaintiff for his injuries;

F.    Punitive damages paid to Plaintiff by the CITY, MAYOR, KAMEG, CHIEF and listed officers in a reasonable amount which the trier of fact deems sufficient to deter future illegal conduct;

G.    Punitive damages paid to Plaintiff by MAYOR, CHIEF and the listed officers in their personal capacities in a reasonable amount which the trier of fact deems sufficient to deter the conduct of these individuals; and

H.    Payment by the CITY, MAYOR, KAMEG, CHIEF and listed officers of Plaintiff's attorneys' fees, witness fees and costs of this action, in an amount to be set forth in an affidavit from the attorney(s) for Plaintiff at the conclusion of this matter.

## COUNT THREE--42 U.S.C. §3604 (DISCRIMINATION IN RENTAL HOUSING)

106.    Plaintiff incorporates by reference each allegation of Paragraph 1 through Paragraph 105 of this Complaint as though the same allegations were restated and repeated verbatim in this Paragraph 106 of this Count Three.

107.    Plaintiff is affiliated by family and friendship to tenants in a Complex primarily occupied by black people and characterized as low-income or government supported housing.

108.    Plaintiff has been victimized by the joint actions of the CITY, TRUST and MANAGER in making unavailable the full and beneficial enjoyment by his family and friends of their dwellings by transferring the CITY and KAMEG all authority of the TRUST and MANAGER to control persons on the Complex premises if they were guests of tenants or family members of tenants.

109.    On information and belief, the Agency Agreement authorizes the CITY as well as

23

KAMEG (to the extent it operates in the CITY) to detain, seize and arrest trespassers in a fashion that (a) permits the CITY to exercise some purported authority to search and seize persons gathering for lawful purposes and (b) file trespass charges against persons who were never barred by the property owners.

110.    On information and belief, the owners of more than 1,000 rental properties located in Kankakee executed the Agency Agreement in substantially the same form reflected in Exhibit "A", attached hereto.

111.    The CITY has utilized its purported authority under the Agency Agreement to detain, interrogate and search hundreds of minorities in Kankakee and dozens of minorities at the Complex, including parties outside Plaintiff's friends' and family's units on December 4, 2002 and in front of a building on January 1, 2003–both stops occurring during completely protected gatherings for lawful purposes among friends and relatives with a one or more guests of tenants at the Complex.

112.    In reference to these two incidents, the police reports proclaim that the officers involved stopped the victims of their actions for suspicion of loitering, thus providing a pattern of conduct prohibited by the United States Supreme Court in City of Chicago v. Morales, 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67, (1999).

113.    On information and belief, the CITY, COUNTY, KAMEG and their respective police officers, including but not limited to those named in this Complaint received a mandate from the Chief and Sheriff as well as the Mayor to "clean up" the areas subject to Agency Agreements through the use of aggressive police tactics including the loitering interrogations, stops and searches.

114.    The refusal noted in Paragraphs 80 and the denial of enjoyment noted in Paragraph 81 by reason of the Agency Agreement continues the pattern and practice of the CITY, COUNTY and KAMEG as well as the practice of the Named Officers to control the free movement of persons

24

who never authorized the Agency Agreement, tenants of the rental units and guests of tenants of the rental units.

115.    The policy, pattern and practice is discriminatory on the basis of race because the rental units which are the subject of the Agency Agreement are occupied primarily by persons who occupy a position of racial minority, who are not of a Caucasian, who are more likely than not single or single mothers or of a foreign national origin.

116.    The CITY, COUNTY and KAMEG, by acting pursuant to the grant of purported authority under the Agency Agreement have discriminated against persons including Plaintiff in adopting draconian tactics of surveillance, enforcement of unwritten loitering laws and unannounced unit searches at the Complex and by otherwise denying rental unit occupants (including Plaintiffs) the same terms, conditions, or privileges of rental of a dwelling as are available to the racial majority or Caucasians in their ownership or rental of property and their ability to have guests.

117.    The CITY, COUNTY and KAMEG have denied Plaintiff, as a result of their discrimination, of several liberties noted in Count One and Count Two as well as his freedom to associate with individuals in minority-occupied apartments among numerous others who visit tenants in the Complex or other complexes in the CITY, of services or facilities in connection with their rental units because, like Plaintiffs, renters lose the use of common hallway areas, playground areas, parking areas, gathering areas and open space as a result of the draconian enforcement of the Agency Agreement.

118.    The loss of these rights arises solely on the basis of race, color, and national origin because such tactics have not been common in neighborhoods occupied by owners or renters that are in the racial majority or Caucasian.

119.    The Complex and its tenants, including tenants, as well as their guests, including

25

guests, enjoy and benefit from protection under the Fair Housing Act, 42 U.S.C. §3601 *et seq.*

120.    Plaintiff is an "aggrieved persons" under the Fair Housing Act, 42 U.S.C. §3602, since each claims to have been injured by a discriminatory housing practice and each believes that such person will be injured by a discriminatory housing practice that is about to occur.

121.    The concerted effort violated the Plaintiff's rights under the 42 U.S.C. §§3604, 3617.

122.    The criminal sanction to interference or retaliation for the exercise of fair housing privileges under 42 U.S.C. §3631 creates a personal right of action in Plaintiff.

123.    Plaintiff is not only within the core group of persons Congress sought to protect in enacting the criminal legislation, but Plaintiffs also suffered injury as a direct result of conduct Congress anticipated would cause the injuries addressed in this Court.

124.    KAMEG's actions on December 4, 2002 and on January 1, 2003 are a part of a lengthy pattern and practice that involved warrantless stops and searches by KAMEG officers in the complete absence of any probable cause.

125.    On December 4, 2002, the attack on the man known to Plaintiffs began with a KAMEG request for identification from two people who were simply departing from a unit in the Complex.

126.    The police attacked both men with pepper spray and physical force and attacked one of the men severely through a beating that inflicted a head injury and left the victim unconscious as he was pushed or thrown down stairs.

127.    Plaintiffs were never the subject of any inquiry on the night of the arrests, have never committed a crime and have never been suspected of committing any crime.

128.    Nonetheless, Plaintiff remains subject to KAMEG's constant forced movement of Plaintiff from one building to the next despite their presence as invitees and tenants and their illegal

prohibition on Plaintiff returning to the Complex.

129. Plaintiff remains subject to the same policies and actions of the KAMEG officers.

130. Plaintiff suffered embarrassment and humiliation as a result of the stigma associated with the constant threats of a search or seizure of their persons by KAMEG police.

131. Plaintiff does not enjoy the common areas of the Complex as he once did as a guest.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court enter a judgment against the CITY, COUNTY, CHIEF, KAMEG and officers MARTIN, MALLANDINE, PASEL and MARCOTTE as well as the UNKNOWN OFFICERS providing as follows:

A. Enjoining the CITY, COUNTY, KAMEG as well as their officers from taking or omitting any action in an effort to retaliate against Plaintiff or any other person in their family for filing this suit;

B. Enjoining the CITY, COUNTY and KAMEG as well as their officers from acting pursuant to the Agency Agreement and acting pursuant to any revision of such agreement without receiving the advance approval of this Court;

C. Enjoining the CITY, COUNTY and KAMEG as well as their officers from conducting the ongoing stops and searches (pat-down, interrogations and unit entries) without warrant and without probable cause;

D. Enjoining the CITY, COUNTY and KAMEG as well as their officers from entering upon common areas other than paved parking surface with their vehicles except in the instance of an emergency.

E. Mandatorily imposing upon the CHIEF, OFFICER, CITY, COUNTY and KAMEG training, education and other requirements with the goal of enhancing the knowledge of racial matters and relations and betting the skills of officers within CITY and

27

COUNTY law enforcement relating to interracial cooperation, including but not limited to a requirement that the CITY, COUNTY and KAMEG law enforcement agencies obtain certification from a recognized and reliable law enforcement certification organization such as CALEA;

F.      Compensatory damages, paid to Plaintiff by the CITY, MAYOR, KAMEG, CHIEF and listed officers in a reasonable amount which the trier of fact deems sufficient to compensate Plaintiff for his injuries;

F.      Punitive damages paid to Plaintiff by the CITY, MAYOR, KAMEG, CHIEF and listed officers in a reasonable amount which the trier of fact deems sufficient to deter future illegal conduct;

G.      Punitive damages paid to Plaintiff by MAYOR, CHIEF and the listed officers in their personal capacities in a reasonable amount which the trier of fact deems sufficient to deter the conduct of these individuals; and

H.      Payment by the COUNTY, CITY, MAYOR, KAMEG, CHIEF and listed officers of Plaintiff's attorneys' fees, witness fees and costs of this action, in an amount to be set forth in an affidavit from the attorney(s) for Plaintiff at the conclusion of this matter.

**COUNT FOUR–42 U.S.C. §1986 NEGLECT TO PREVENT VIOLATION**

(Plaintiff v. MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG)

1-131.   Plaintiff incorporates by reference each allegation of Paragraph 1 through Paragraph 131 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 1 through Paragraph 131 of this Count Four.

132.      The MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG all possessed knowledge of the abuses of constitutional rights and the use of excessive force at the Complex.

28

133. Notwithstanding such knowledge, the elected alderpersons and the MAYOR censured or attempted to censure a member of the CITY's corporate authorities who was openly critical of KAMEG and its abuse of rights and use of excessive force.

134. The CITY also defended a suit whereby the TRUST and MANAGER claimed that they were the subjects of targeted and uneven enforcement of zoning and building code regulations and whereby the TRUST and MANAGER alleged a conspiracy to discriminate against the TRUST and MANAGER due to their operation of a federally supported housing opportunity for lower-income residents who were primarily African-American by appearance and by blood.

135. The MAYOR, CHIEF and SHERIFF had knowledge of the wrongs conspired to be done through KAMEG, including but not limited to the use of excessive force and unlawful stops and seizures that were clearly illegal under City of Chicago v. Morales.

136. The MAYOR, CITY and individual police officers present on December 4, 2002 and again on January 1, 2003 had knowledge of the wrongs to be committed, including particularly Patrolman Mallandine who not only used excessive force upon and battered SON and DAUGHTER but who also falsely advised a CITY police officer to arrest a guest of another tenant at the Complex.

137. The MAYOR had knowledge of the conspiracy between the CITY and PERRY GROUP as a result of the City's extensive negotiations and agreements in relation to inclusion of roughly 105 acres of land owned or controlled by PERRY GROUP in a tax increment financing district approved by the CITY and in effect presently.

138. The violations through concerted action and mentioned in 42 U.S.C. §1985 were known to have been committed and the CITY, MAYOR, CHIEF, COUNTY, SHERIFF and KAMEG all knew such violations would occur again due to the consistency in training deficiencies in the CITY, COUNTY and at KAMEG.

139.    The MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG all possessed the power and authority to prevent or to aid in preventing the commission of the violations through concerted action and mentioned in 42 U.S.C. §1985.

140.    The MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG all neglected or refused to intervene and prevent or aid in the preventing of the commission of further violations.

141.    Plaintiff suffered injury as a proximate result of the failure of officials in control to act.

WHEREFORE, the Plaintiff respectfully request that this Honorable Court enter judgment in their favor and against each defendant individually in the amount of the sum of all damages caused by such wrongful act, which such person by reasonable diligence could have prevented plus costs and attorneys fees allowable under federal statute (42 U.S.C. §1988).

## COUNT FIVE–42 U.S.C. §1985 CONSPIRACY

1-141.    Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 141 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 1 through Paragraph 141 of this Count Five.

142.    There is no reason and no constitutional support whatsoever for the conduct noted in Count One and Count Two such as pushing or throwing an unconscious Plaintiff down the stairs or to slam the Plaintiff's head into a wall.

143.    The nature of the beating and the expansion of the attack by the police into other areas was only intended to operate as an example to persons not involved that they should not question or challenge KAMEG lest the same result confront them in the future.

144.    The events before and after the December 4, 2002 beating establish a pattern and practice of random warrantless searches without probable cause.

145.   The events before and after the December 4, 2002 beating establish a pattern and practice of systematic enforcement of unwritten loitering rules and the treatment of tenants and their guests at the Complex as prisoners in their own homes and common areas.

146.   The CITY has conspired with KAMEG, the COUNTY, the SHERIFF and individual officers to deter witnesses from coming forward to provide information in relation to the trial of the criminal misdemeanor charges against the beaten man.

147.   The deterrence arises from such use of force as was apparent on December 4, 2002 and the intimidation or threat of the use of force inherent in the continuing stops, seizures and searches that oppress Complex tenants and guests of tenants, including Plaintiff.

148.   The purpose of the deterrence is to dissuade, under compulsion, tenants and guests of tenants from participating in and attending criminal hearings and trials in Kankakee County and to deter people from testifying to any matter pending therein, freely, fully, and truthfully.

149.   PERRY GROUP owns or has contracted for brokerage or ownership of approximately one hundred acres of land located adjacent to the Complex and located in Kankakee County.

150.   Specifically, PERRY GROUP owns and leases or attempts to lease or sell in excess of 100,000 s.f. of industrial warehouse space on Eastgate Industrial Parkway in Kankakee and in excess of 100 acres located in the Eastgate Industrial Park.  The Eastgate Industrial Park is adjacent to the Complex.

151.   The Defendant TONY PERRY is an individual who, on information and belief, has served as an officer, representative and agent of PERRY GROUP and PERRY ASSOCIATES and who has acted personally to injure the Plaintiff and others in the conspiracy herein described.

152.   With the written and oral approval of PERRY and the PERRY GROUP, the CITY, CHIEF, KAMEG and police officers present on December 4, 2002 conspired and went upon the

premises of the Complex, for the purpose of depriving, either directly or indirectly, Plaintiffs and the class of persons to which they belong of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of the United States and other authorities, including the Department of Housing and Urban Development, from giving or securing to all persons within Illinois, Kankakee County and the City of Kankakee the equal protection of the laws.

153.    The conspiracy in this case arises from express and implied agreements by and between the PERRY GROUP, PERRY, PERRY ASSOCIATES, on one hand as the owner and developer of the nearby 100-plus acres, and the MAYOR, CITY, KAMEG and the COUNTY, on the other hand to, on information and belief, adopt the most aggressive and overbearing positions possible in relation to the Complex in order to preserve and enhance the property value of the surrounding property owned or operated by the PERRY GROUP, to increase the value of the tax increment financing district to the PERRY GROUP, the CITY and other taxing districts whose income indirectly benefits the CITY and to force the Complex into abandonment or force the TRUST and MANAGER into insolvency.

154.    The purpose of the conspiracy was to cause the abandonment of affordable housing at the Complex and open a pathway to development more in accord with the development contemplated by the zoning and tax increment financing approved for the immediate area in the vicinity of the Northeast quadrant of the intersection of Interstate 57 and Court Street.

155.    Additionally, the purpose of the conspiracy was to force the "animals", as PERRY has referred to tenants and guests of tenants at the Complex, to relocate because PERRY GROUP, PERRY, the MAYOR and the CITY did not believe a population of minority residents proximate to the 100-plus acre development was conducive to the attainment of goals and objectives behind the

zoning and tax increment financing district approved for the 100-plus acres.

156.    In light of the conspiracy set forth above, and as a result of one or more of the noted conspirators causing or purposefully omitting acts in furtherance of the object of such conspiracy, each conspirator is liable to Plaintiff because he was injured in his person and his enjoyment of property and Plaintiff has been deprived of having and exercising rights or privileges of citizens of the United States regardless of race or color.

WHEREFORE, the Plaintiff respectfully request that this Honorable Court enter a judgment against the PERRY GROUP, PERRY ASSOCIATES, PERRY, MAYOR, CITY, COUNTY, CHIEF, KAMEG and officers MARTIN, MALLANDINE, PASEL and MARCOTTE as well as the UNKNOWN OFFICERS, jointly and severally, providing substantially as follows:

A.    Enjoining the CITY, COUNTY, KAMEG as well as their officers from taking or omitting any action in an effort to retaliate against Plaintiffs or any other person in their family for filing this suit;

B.    Enjoining the CITY, COUNTY and KAMEG as well as their officers from acting pursuant to the Agency Agreement and acting pursuant to any revision of such agreement without receiving the advance approval of this Court;

C.    Enjoining the CITY, COUNTY and KAMEG as well as their officers from conducting the ongoing stops and searches (pat-down, interrogations and unit entries) without warrant and without probable cause;

D.    Enjoining the CITY, COUNTY and KAMEG as well as their officers from entering upon common areas other than paved parking surface with their vehicles;

E.    Mandatorily imposing upon the CHIEF, OFFICER, CITY, COUNTY and KAMEG training, education and other requirements with the goal of enhancing the knowledge

of racial matters and relations and betting the skills of officers within CITY and COUNTY law enforcement relating to interracial cooperation, including but not limited to a requirement that the CITY, COUNTY and KAMEG law enforcement agencies obtain certification from a recognized and reliable law enforcement certification organization such as CALEA;

F.   Compensatory damages, paid to Plaintiff by the PERRY GROUP, PERRY ASSOCIATES, PERRY, CITY, MAYOR, KAMEG, CHIEF and listed officers in a reasonable amount which the trier of fact deems sufficient to compensate Plaintiff for his injuries;

F.   Punitive damages paid to Plaintiff by the PERRY GROUP, PERRY ASSOCIATES, PERRY, CITY, MAYOR, KAMEG, CHIEF and listed officers in a reasonable amount which the trier of fact deems sufficient to deter future illegal conduct;

G.   Punitive damages paid to Plaintiff by PERRY GROUP, PERRY ASSOCIATES, PERRY, MAYOR, CHIEF and the listed officers in their personal capacities in a reasonable amount which the trier of fact deems sufficient to deter the conduct of these individuals; and

H.   Payment by the PERRY GROUP, PERRY ASSOCIATES, PERRY, COUNTY, CITY, MAYOR, KAMEG, CHIEF and listed officers of Plaintiff's attorneys' fees, witness fees and costs of this action, in an amount to be set forth in an affidavit from the attorney(s) for Plaintiff at the conclusion of this matter.

## COUNT SIX–COMMON LAW BATTERY

(Plaintiff v. MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG)

157.   Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph

156 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 157 of this Count Six.

158.    The police officers present on December 4, 2002 intended to and did cause great bodily harm to Plaintiff.

159.    Plaintiff suffered a battery at the hands of the CITY and police officers present on December 4, 2002.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an award of damages in their favor in an amount commensurate to the harm caused.

## COUNT SEVEN–INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Plaintiff v. MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG)

160.    Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 156 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 160 of this Count Seven.

161.    Defendants' conduct noted in this Complaint, specifically that which occurred on December 4, 2002 was truly extreme and outrageous in that it far exceeded all reasonable boundaries.

162.    Plaintiff suffered physical contact sufficient to cause extreme emotional distress the treatment of which he is not sufficiently able to afford.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter an award of damages in their favor in an amount commensurate to the harm caused.

## COUNT EIGHT–NEGLIGENT SUPERVISION, HIRING AND PROMOTION

(Plaintiff v. CITY, CHIEF, SHERIFF and KAMEG)

163.    Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 162 of this Complaint as though the same allegations were restated and repeated verbatim in

Paragraph 163 of this Count Eight.

164. The CITY, the CHIEF and KAMEG were agents of the TRUST and MANAGER in that they, on information and belief, obtained some purported authority over freedom of movement of third persons who were on the Complex grounds or within the Complex buildings.

165. As agents of the TRUST and MANAGER, the CITY, the CHIEF and KAMEG owed the tenants and guests of tenants the same duty of reasonable supervision and operations at the Complex and within the law, acting within the scope of the agency without creating undisclosed risks or creating risks which they failed to educate citizens in avoiding or harming occupants or invitees to the Complex during the course of their agency.

166. The CITY and KAMEG knowingly and wilfully permitted, recommended and approved promotions of one or more members of the CITY's police force who had known records of police brutality and false arrest to positions of management within the CITY's police department and within KAMEG.

167. On information and belief, neither the CITY, the COUNTY, the CHIEF, the SHERIFF nor KAMEG sufficiently sought training or adequate supervision of one or more of its promoted officers or officers assigned to KAMEG.

168. On information and belief, despite complaints from TRUST and MANAGER over their handling of the Agency Agreement and the numerous unwarranted searches without probable cause, neither the CITY, the COUNTY, the CHIEF, the SHERIFF nor KAMEG sufficiently sought training or adequate supervision of one or more of the officers assigned to KAMEG in relation to how the officers would operate under the Agency Agreement.

169. On information and belief, despite complaints from medical professionals at Provina St. Mary's Hospital about the number of battered men and women they treated, neither the CITY,

36

the COUNTY, the CHIEF, the SHERIFF nor KAMEG sufficiently sought training or adequate supervision of one or more of the officers assigned to KAMEG in relation to the handling of minorities, the handling policing of affordable housing areas and the handling of appropriate arrest or search and seizure methods.

170.     Plaintiff proximately suffered personal injury as a result of the conduct of the Defendant in this Count.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter an award of damages in their favor in an amount commensurate to the harm caused.

## COUNT NINE–SECTION 1983 FAILURE TO TRAIN & DISCIPLINE

### (Children v. MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG)

171.     Defendants MAYOR, CITY , CHIEF, COUNTY, SHERIFF and KAMEG had and have an official policy or custom in relation to the Complex whereby they encourage its officers to display force, confidence and an overbearing nature that includes harassment, domination and abuse of rights through the following tactics raised in this Complaint.

172.     Defendants MAYOR, CITY , CHIEF, COUNTY, SHERIFF and KAMEG had and have an official policy or custom in relation to the operations of KMEG and KMEG officers whereby it encouraged its officers to display force, confidence and an overbearing nature that includes harassment, domination and abuse of rights through similar tactics, particularly in relation to actions occurring in public areas where KAMEG specifically sought to humiliate residents and guests in the Complex and place them in great fear for their own personal safety in their residences.

173.     Defendants MAYOR, CITY , CHIEF, COUNTY, SHERIFF and KAMEG all failed to obtain, require or provide adequate training and certification for officers involved in patrolling the Complex or involved in KAMEG operations at the Complex.

37

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an award of damages in his favor in an amount commensurate to the harm caused, punitive damages and an award of attorneys fees, expenses and court costs.

## COUNT TEN–INJUNCTION AGAINST LOITERING ENFOREMENT

### (Plaintiffs v. CITY, KAMEG, TRUST and MANAGER)

174. As noted above and reflected in Exhibit "A", TRUST and MANAGER have, on information and belief, entered into an Agency Agreement with the CITY and KAMEG which purports to grant the CITY's police officers control over the freedom of movement of tenants and guests.

175. The CITY, with the approval of the County's duly elected State's Attorney, has adopted an official policy of the CITY and COUNTY, and thus KAMEG, that the Agency Agreement permits the CITY officers to stop persons for loitering about when no illegal conduct is apparent.

176. The CITY, with the approval of the County's duly elected State's Attorney, has adopted an official policy of the CITY and COUNTY, and thus KAMEG, that the Agency Agreement permits the CITY officers to arrest persons for criminal trespass when the owner of a rental or other property has not prohibited the arrestee from coming onto the property and the sole decision that the Plaintiff or another arrestee should not be on the property resides in the police or another public official.

177. Plaintiff has a reasonable expectation that the CITY, COUNTY and KAMEG will continue to assert a right to stop, search and arrest people for loitering.

178. Plaintiff has a reasonable expectation that the CITY, COUNTY and KAMEG will continue to assert a right to arrest people for trespass when the TRUST and OWNER have not barred the arrestee from entering the Complex.

38

179.    Plaintiff has no adequate remedy at law to remedy this illegal agreement and the unconstitutional interpretation of the Agency Agreement.

180.    The circumstances of stops, searches and arrests based on loitering and trespass are likely to repeat themselves continuously.

181.    The enforcement of purported loitering and trespass laws is not contemplated by federal or state law.

182.    The balance of the equities in this case favors a preference for preservation of rights under the United States Constitution and the 1970 Illinois Constitution.

183.    Plaintiff's right to move about freely without coercion or threat of arrest or injury is a clear right to which there is no question under <u>City of Chicago v. Morales</u>.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter a judgment declaring the Agency Agreement invalid and unconstitutional, declaring the acts of the police to enforce loitering and trespass laws unconstitutional and permanently enjoining efforts in pursuit of the objectives of the Agency Agreement to the extent it seeks to control the movement about of persons who have not agreed to that agreement.

Respectfully Submitted,

LAWRENCE BURKES

By:_____
        One of Plaintiffs' Attorneys

Mark W. Daniel, Esq.
RATHJE & WOODWARD
300 E. Roosevelt Road, Suite 300
Wheaton, IL 60187
(630) 668-8500

DOCKETED

DEC 0 5 2003

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LAWRENCE E. BURKES, JR.,                      )

             Plaintiff,                    )    **03C  8787**

                              )

         v.                               )    Civil Action No.

                              )             **JUDGE ZAGEL**

THE COUNTY OF KANKAKEE, a body             )    District Judge:

politic and corporate, CITY OF KANKAKEE, a )    Magistrate:    **MAGISTRATE JUDGE**

municipal corporation, KANKAKEE AREA       )                **GERALDINE SOAT BROWN**

METROPOLITAN ENFORCEMENT GROUP, a          )

joint venture of municipalities and bodies politic or )

an association of such entities, TIMOTHY   )

BUKOWSKI, in his official and personal     )

capacities, MICHAEL KINKADE, in his official )

and personal capacities, AUSTIN BANK OF    )

CHICAGO, as Trustee U/T/A dated July 20, 1988 )    **JURY TRIAL DEMANDED**

(Tr. No. 6431), CRESTVIEW VILLAGE          )

APARTMENTS, L.P., an Illinois limited      )

partnership, DONALD GREEN, in his official and )

personal capacities, KENNETH MALLANDINE,   )

in his personal capacity, JACK JOHNSTON, in his )

personal capacity, CHAD GESSNER, in his    )

personal capacity, PATROLMAN MARTIN, in his )

personal capacity, LIEUTENANT MARCOTTE, in )

his personal capacity, PERRY GROUP, LTD., an )

Illinois limited partnership, TONY PERRY & )

ASSOCIATES, INC., an Illinois corporation, )

TONY PERRY, an individual, and OTHER       )

UNKNOWN PERSONS,                           )

             Defendants.                   )

---

## JURY DEMAND

    Plaintiff, LAWRENCE E. BURKES, JR., hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

LAWRENCE E. BURKES, JR.

By:_____

One of his Attorneys

Mark W. Daniel, Esq.
Rathje & Woodward
300 E. Roosevelt Road, Suite 300
P.O. Box 786
Wheaton, IL 60189
630-668-8500